IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HDR GLOBAL TRADING LIMITED,　　）
*et al.*　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　　）
　　　　　　　Plaintiffs,　　　　　　　）
　　　　　　　　　　　　　　　　　　　　）
　　　v.　　　　　　　　　　　　　　　　）　　Civil Action No. 1:22cv1149 (PTG/JFA)
　　　　　　　　　　　　　　　　　　　　）
bitmexaa.com, *et al.*,　　　　　　　）
　　　　　　　　　　　　　　　　　　　　）
　　　　　　　Defendants.　　　　　　　）
　　　　　　　　　　　　　　　　　　　　）

APR 1 4 2023

CLERK, U.S. ...... ..URT
ALEXANDRIA, VIRGINIA

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on a motion for default judgment filed by plaintiffs HDR

Global Trading Limited and HDR SG PTE Ltd. (collectively "plaintiffs") against 620 defendant

domain names pursuant to Federal Rule of Civil Procedure 55(b)(2).  (Docket no. 23).  Pursuant

to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his

proposed findings of fact and recommendations, a copy of which will be provided to all

interested parties.

### Procedural Background

On October 12, 2022, plaintiffs filed a complaint for *in rem* relief against 522 defendant

domain names pursuant to the *in rem* provisions of the Anti-Cybersquatting Consumer Protection

Act ("ACPA"), 15 U.S.C. § 1125(d).  (Docket no. 1) ("Compl.").  Plaintiffs filed an amended

complaint on October 27, 2022 against 620 defendant domain names pursuant to the same

provisions of the ACPA.  (Docket no. 10) ("Am. Compl.").  Plaintiffs were not able to identify

the registrant(s) of the defendant domain names or their contact information from the WhoIs

records. (Docket no. 17-1 ¶ 4).  On November 10, 2022,  plaintiffs sent an email and letter to

1

NameSilo, LLC, the registrar for all defendant domain names, notifying NameSilo that plaintiffs had filed this lawsuit, attaching a copy of the amended complaint, and providing notice of plaintiffs' intent to proceed *in rem* against defendant domain names.  (Docket nos. 17-1 ¶ 5; 17-2).

On January 6, 2023, plaintiffs filed a motion for order to publish notice of action. (Docket no. 16).  The court granted the motion and entered an order on January 9, 2023 requiring plaintiffs to publish notice of the action and provide a copy of the order to the registrant(s) through email and/or electronic portal, if registrant(s) made such contact informational publicly available.  (Docket no. 19).  Plaintiffs filed a declaration on January 27, 2023 that established a copy of the order was published with *The Washington Post* on January 19, 2023 and stated that a copy of the order was not provided to the registrant(s) via email or electronic portal because those means were not publicly available.  (Docket no. 20 ¶ 4; *id.* at 5–7).

On February 10, 2023, plaintiffs requested an entry of default against the defendant domain names, which the Clerk of Court entered on February 13, 2023.  (Docket nos. 21–22). On March 24, 2023, plaintiffs filed this motion for default judgment, a memorandum in support, and a notice of hearing for Friday, April 14, 2023, at 10:00 a.m.  (Docket nos. 23–25).  Plaintiffs included certificates of service with these pleadings indicating that the filings were served on NameSilo.  (Docket nos. 23 at 30; 24 at 16; 25 at 29).  At the hearing on Friday, April 14, 2023, counsel for plaintiffs appeared, but no one appeared on behalf of the defendant domain names.

### Factual Background

The following facts are established by the amended complaint and its attachments.  (Am. Compl.; Docket no. 10-1).  Plaintiff HDR Global Trading Limited is a Seychelles corporation with its principal place of business in the Republic of Seychelles.  (Am. Compl. ¶ 2).  Plaintiff

HDR SG PTE Ltd. is a Singapore limited company with its principal place of business in Singapore. (Am. Compl. ¶ 3). First formed in 2014, plaintiffs own and operate a leading international cryptocurrency trading platform under their BITMEX marks. (Am. Compl. ¶ 630). Since 2014, plaintiffs have registered the domain name bitmex.com, where they advertise and promote their services, and their website at that domain name generates tens of millions of page views per month. (Am. Compl. ¶ 634). Plaintiffs' BITMEX platform is used by millions of traders across the world, resulting in a daily trading volume regularly exceeding $1 billion in value. (Am. Compl. ¶ 631). Plaintiffs have registered the BITMEX marks, including their BITMEX word mark and their BITMEX logos, in numerous countries around the world. (Am. Compl. ¶ 633; Docket no. 10-1). Plaintiffs have also secured copyright protection in their cryptocurrency trading engine in several jurisdictions, including the United States. (Am. Compl. ¶ 633). Plaintiffs allege that given their longstanding role in the industry, the BITMEX marks and logo have grown to signify trust and value amongst cryptocurrency traders, and those traders and relevant public have come to associate the BITMEX marks exclusively with plaintiffs. (Am. Compl. ¶ 632). To date, plaintiffs have captured dozens of domain names attempting to defraud traders and the public by using fake or confusingly similar BITMEX marks. (Am. Compl. ¶ 637).

Long after plaintiffs acquired rights in the BITMEX mark, the registrant(s) registered each of the defendant domain names. (Am. Compl. ¶ 638). Plaintiffs allege that the defendant domain names are confusingly similar to the BITMEX mark, and each of the defendant domain names contains plaintiffs' BITMEX mark in full followed by two letters of the Latin alphabet. (Am. Compl. ¶ 639). The use of the BITMEX mark by the registrant(s) in the defendant domain names is without plaintiffs' authorization. (Am. Compl. ¶ 640).

3

Plaintiffs allege that the registrant(s) of the defendant domain names provided material and misleading false contact information when applying and maintaining the registration of the defendant domain names, the person or entity identified as the registrant(s) is not the true owner of the defendant domain names, or the registrant(s) used a privacy shield that shields the identity of the registrant(s) from publication in WhoIs domain registration records. (Am. Compl. ¶¶ 647–48). If the defendant domain names were registered by more than one person or entity, plaintiffs claim the registrant(s) of the defendant domain names acted in concert given that groups of defendant domain names were registered on the same date, with the same registrar, and/or resolve to similar content. (Am. Compl. ¶ 649).

Plaintiffs assert the registrant(s) registered the defendant domain names with the intent to divert consumers away from plaintiffs' website located at bitmex.com, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the defendant domain names and their websites. (Am. Compl. ¶ 646). Several of the defendant domain names previously resolved to a website that displays plaintiffs' BITMEX logo and prompts visitors to type in a username and password in an effort to obtain sensitive information from plaintiffs' customers. (Am. Compl. ¶ 641). Other defendant domain names resolve to malicious content and thus are propagating malware or viruses to enable access to sensitive personal or financial data. (Am. Compl. ¶ 642). Some of the other defendant domain names redirect to other websites that the registrant(s) are using to profit from traffic diverted to those websites. (Am. Compl. ¶ 643). The defendant domain names do not reflect the legal name of the registrant(s), and the registrant(s) have not engaged in *bona fide* noncommercial use or fair use of the BITMEX mark in a website located at any of the defendant domain names. (Am. Compl. ¶¶ 644–45).

4

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure to plead or otherwise defend against this action, the Clerk of Court has entered a default as to the 620 defendant domain names. (Docket no. 22).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter when necessary to enter or effectuate judgment.

## Joinder Under Federal Rule of Civil Procedure 20

As an initial matter, this proposed findings of fact and recommendations will address whether the 620 defendant domain names were joined properly as defendants in this action. Federal Rule of Civil Procedure 20(a)(2) directs that multiple defendants may be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). Thus, there are two tests that must be satisfied for a finding of proper joinder under Rule 20: first, a right to relief must be asserted against each

defendant that relates to or arises out of the same transaction, occurrence, or series of transactions or occurrences; and second, a question of law or fact common to all defendants must arise in the suit. The Supreme Court has generally encouraged joinder of claims, parties, and remedies in order to "entertain[] the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

To satisfy the transaction or occurrence test under Rule 20(a)(2), there must be a logical relationship between the events giving rise to the cause of action against each defendant. Though this case is brought as an *in rem* action against 620 individual defendant domain names, plaintiffs allege that, if the defendant domain names were registered by more than one person or entity, the registrants acted in concert given that groups of defendant domain names were registered on the same date, with the same registrar, and/or resolve to similar content. (Am. Compl. ¶ 649). Given these allegations, in particular that all defendant domain names were registered with the same registrar and the apparent pattern of registration of the defendant domain names using the BITMEX mark with nearly every two-letter combination possible, sufficient support has been presented to establish that this ACPA claim against the 620 defendant domain names satisfies Rule 20's transaction or occurrence test as articulated by the Supreme Court and the courts of this Circuit. As to the common question of fact or law, in this case, there is no question that the claims asserted by plaintiffs against the 620 defendant domain names do involve common questions of law: the validity of plaintiffs' trademark rights and the illegal act of cybersquatting allegedly committed by each of the 620 defendant domain names.

In the alternative, the court has discretion to act *sua sponte* to, "on just terms, add or drop a party." Fed. R. Civ P. 21. Previously, this court has found that any defects to joinder may be disregarded when the joinder does not affect any party's substantial rights. *See Coach, Inc. v.*

6

*1941 Coachoutletstore.com*, 2012 WL 27918, at \*4 (E.D. Va. Jan. 5, 2012) ("And, there is no prejudice to any defaulting defendant, whose liability may be established upon default irrespective of the presence of any other defendant.  As a result, the Court finds that it must disregard any potential defects related to joinder, as they do not affect any party's substantial rights, and the Court's correction of those defects under Rule 21 would not be on just terms.") (internal citation and quotation marks omitted).  Here, none of the defaulting defendant domain names are prejudiced by joinder, as their liability is established by their own default, not the default of any other defendant domain name.  As such, joinder does not affect any of the defendant domain names' substantive rights.

For these reasons, the undersigned recommends a finding that joinder is appropriate as to the 620 defendant domain names.

## Jurisdiction and Venue

A court must have subject matter jurisdiction over the claims, personal or *in rem* jurisdiction over a defaulting defendant, and venue must be proper before the court can render a default judgment.  Plaintiffs' claims arise under the ACPA, 15 U.S.C. § 1125(d), and this court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a).  (Am. Compl. ¶¶ 625–26).

Plaintiffs allege this court has *in rem* jurisdiction over the defendant domain names under 15 U.S.C. § 1125(d)(2)(A).  (Am. Compl. ¶ 626).  Under that statute, the first requirement is that "the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c)."  15 U.S.C. § 1125(d)(2)(A)(i).  Plaintiffs' BITMEX mark has been registered in multiple countries around the world, but it has not been registered in the United States.  Furthermore, plaintiffs do not allege that they hold a

7

common law trademark over the BITMEX mark in the United States. Still, plaintiffs cite to *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697 (4th Cir. 2016), to support the assertion that the BITMEX mark is protected by 15 U.S.C. § 1125(a).

In *Belmora*, Bayer Consumer Care AG ("Bayer") registered the FLANAX trademark in Mexico and began selling naproxen sodium tablets under the FLANAX brand in Mexico in 1976. 819 F.3d at 702. Bayer chose to use the brand name ALEVE for the same product in the United States market. *Id.* Belmora LLC began selling naproxen sodium tablets as FLANAX in the United States in 2004, and Belmora registered the mark in the United States in 2005. *Id.* Bayer filed a complaint against Belmora for false association under 15 U.S.C. § 1125(a)(1)(A) and false advertising under § 1125(a)(1)(B). *Id.* at 704. In evaluating the false association and false advertising claims, the Fourth Circuit held that "the plain language of § [1125(a)] does not require that a plaintiff possess or have used a trademark in U.S. commerce as an element of the cause of action." *Id.* at 706. Instead, § 1125(a) only requires "that Bayer was 'likely to be damaged' by Belmora's 'use[] in commerce' of its FLANAX mark and related advertisements." *Id.*

In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Supreme Court laid out two principles to govern § 1125(a)'s broad authorization. First, a claim must fall within the "zone of interests" protected by the statute. *Id.* at 129. Second, a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute. *Id.* at 132. A claim under § 1125(a) may proceed only after satisfying both of these principles. *Id.* at 129.

As for the zone of interest test, one purpose relevant to § 1125(a) is "'making actionable the deceptive and misleading use of marks' in 'commerce within the control of Congress.'"

*Belmora*, 819 F.3d at 711 (quoting 15 U.S.C. § 1127).  In *Belmora*, the Fourth Circuit found that

this test was met, as the complaint alleged Bayer lost sales revenue because Belmora's deceptive

and misleading use of FLANAX.  *Id.* at 711–12.  Here, plaintiff alleges that the registrant(s) of

defendant domain names have caused and are causing irreparable harm to plaintiffs.  (Am.

Compl. ¶ 658).  Specifically, the registrant(s) of the defendant domain names have purposefully

registered names confusingly similar to plaintiffs' mark in an effort to divert traffic away from

plaintiffs' websites and towards the registrant(s)' websites.  (Am. Compl. ¶ 643).  Such deceptive

and misleading use of plaintiff's marks harms plaintiffs in a manner that falls within the zone of

interest.

Second, the proximate cause test can be satisfied if economic or reputational injury flows

directly from the deception wrought by the registrant(s) conduct.  *Belmora*, 819 F.3d at 711–12.

Plaintiffs have alleged facts from which the undersigned can draw a reasonable inference that the

economic or reputation injury to plaintiffs flows directly from the registration of defendant

domain names, as well as the use of those defendant domain names to obtain sensitive

information from plaintiffs' customers and propagate malware or viruses to enable access to

sensitive personal financial data.  (Am. Compl. ¶¶ 641–42).  Therefore, plaintiffs meet the

principles laid out in *Lexmark* to qualify for protection under § 1125(a).  Thus, plaintiffs satisfy

the first requirement for *in rem* jurisdiction.

The ACPA also conditions *in rem* jurisdiction upon a finding that the trademark owner

(a) is unable to obtain personal jurisdiction over a person who would otherwise be a defendant in

a civil action under the ACPA or (b) through due diligence cannot find the person who would

have been a defendant in such an action, having sent a notice of the alleged violation and intent

to sue to the registrant of the domain name at the postal and e-mail address provided by the

registrant to the registrar and publishing a notice of the action as the court may direct. *See* 15

U.S.C. § 1125(d)(2)(A)(ii). Given the uncontested assertion that the registrant fields in the

WhoIs records for the defendant domain names reflect material and misleading false contact

information, persons or entities that are not the true owner, or a privacy service that shields the

identity of the registrant(s), there does not appear to be sufficient minimum contacts that exist to

support personal jurisdiction over the registrant(s). (Am. Compl. ¶¶ 647–48). Even though

VeriSign, Inc. ("VeriSign") is the registry for the defendant domain names, and it is located in

this district, "this is not enough to establish minimum contacts." *GlobalSantaFe Corp.*, 250 F.

Supp. 2d at 615; (Am. Compl. ¶ 628). Accordingly, plaintiffs have established that they are

unable to obtain personal jurisdiction over the registrant(s) of the defendant domain names who

would otherwise have been the defendants in this lawsuit, satisfying the requirements of 15

U.S.C. § 1125(d)(2)(A)(ii)(I). Therefore, the court has *in rem* jurisdiction over the defendant

domain names under 15 U.S.C. § 1125(d)(2).

Venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C)(i), which places venue

for an *in rem* ACPA action in the judicial district in which the domain name's registrar, registry,

or other domain name authority that registered or assigned the domain name is located. VeriSign

is the registry for the .COM top level domains, and it is located in this judicial district. (Am.

Compl. ¶ 628). Because each of the defendant domain names are .COM domain names, their

domain registry is located in this district. Accordingly, venue is proper in this district.

For these reasons, the undersigned recommends a finding that this court has subject

matter jurisdiction over this action, that the court has *in rem* jurisdiction over each of the

defendant domain names, and that venue is proper in this court.

## Service

Federal Rule of Civil Procedure 4(n)(1) provides that the court may assert service over property if authorized by a federal statute and notice to claimants of the property must be given as provided in the statute or by serving a summons under this rule. 15 U.S.C. § 1125(d)(2)(B) states the actions outlined in § 1125(d)(2)(A)(ii) shall constitute service of process. The actions described in § 1125(d)(2)(A)(ii)(II) include "(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and (bb) publishing notice of the action as the court may direct promptly after filing the action."

Plaintiffs were not able to identify the registrant(s) of the defendant domain names or a method for contacting the registrant(s). (Docket no. 17-1 ¶ 4). On November 10, 2022, plaintiffs sent an email and letter to the registrar for all defendant domain names, NameSilo, notifying NameSilo that plaintiffs filed suit in this court, attaching a copy of the amended complaint, and providing notice of plaintiffs' intent to proceed *in rem* against the defendant domain names. *Id.* ¶ 5.

Following the court's order directing plaintiffs to publish the order in *The Washington Post* and providing the order through email and/or electronic portal to the registrant(s) of the defendant domain names (Docket no. 19), plaintiffs filed a declaration that the order was published in *The Washington Post* on January 19, 2023 and they were not able to provide a copy of the order to the registrant(s) via email or electronic portal because those means were not publicly available (Docket no. 20 ¶¶ 4–5). Accordingly, the undersigned recommends a finding that service of process has been accomplished as set forth in 15 U.S.C. § 1125(d)(2)(B).

## **Grounds for Entry of Default**

In accordance with Federal Rule of Civil Procedure 12(a) and the notice published in *The Washington Post*, anyone making a claim to the defendant domain names was required to file a responsive pleading by February 9, 2023; twenty-one (21) days after the notice of action was published. No responsive pleading has been filed, and the time for doing so has since expired. On February 10, 2023, plaintiffs filed a request for entry of default against the defendant domain names. (Docket no. 21). Thereafter, the Clerk of Court entered a default against the defendant domain names on February 13, 2023. (Docket no. 22).

For the reasons stated above, the undersigned recommends a finding that notice of this *in rem* action was proper, no one has made a timely claim to the defendant domain names, and the Clerk of Court properly entered a default as to the defendant domain names.

## **Liability**

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Given that a default has been entered, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6).

Plaintiffs have established a violation of the ACPA. To establish an ACPA violation, plaintiffs are required to (1) prove that registrant(s) had bad faith intent to profit from using the defendant domain names, and (2) that the defendant domain names are identical or confusingly similar to, or dilutive of, the distinctive marks owned by plaintiffs. 15 U.S.C. § 1125(d)(1)(A); *see People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). In determining whether defendant acted in bad faith, a court may consider several factors, including:

12

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the *bona fide* offering of any goods or services;

(IV) the person's *bona fide* noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the *bona fide* offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i); *see People for Ethical Treatment of Animals*, 263 F.3d at 368–69.

First, plaintiffs have established that the registrant(s) possessed the requisite bad faith intent to profit from the defendant domain names. (Am. Compl. ¶ 654; Docket no. 24 at 11–13). Defendant domain names do not reflect the trademark or intellectual property rights of the registrant(s), and they do not reflect the legal name of the registrant(s). (Am. Compl. ¶¶ 640, 644). The registrant(s) of defendant domain names have not engaged in *bona fide* noncommercial use or fair use of the BITMEX mark. (Am. Compl. ¶ 645). Instead, the registrant(s) have intended to divert consumers away from plaintiffs' website for commercial gain by creating a likelihood of confusion. (Am. Compl. ¶ 646). Also, the registrant(s) provided material and misleading contact information when applying for and maintaining the registration of the defendant domain names. (Am. Compl. ¶ 647). Lastly, the registrant(s) registered multiple defendant domain names, with each defendant domain name incorporating the BITMEX mark. (Am. Compl. ¶¶ 6–624).

Second, plaintiffs have established that the defendant domain names are confusingly similar to the distinctive marks owned by plaintiffs. (Docket no. 24 at 11). The defendant domain names use the BITMEX mark followed by two letters of the Latin alphabet. (Am. Compl. ¶¶ 6–624, 639). This approach provides for defendant domain names that are confusingly similar to the BITMEX mark. *See Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) ("In assessing whether a mark is confusingly similar, the allegedly infringing domain name does not need to be identical to the registered mark. Rather, the 'dominant or salient portions' of the domain name must be sufficiently similar.") (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 936 (4th Cir. 1995)); *Central Source LLC v. annualdcreditreport.com*, 2014 WL 3811162, at *7 (E.D. Va. Aug. 1, 2014) (finding that the defendant domain names satisfy the

14

confusingly similar test where the "misspelling of the AnnualCreditReport mark constitutes a clear attempt at typosquatting of the AnnualCreditReport mark insofar as omitting or inserting a letter or letters from the word 'AnnualCreditReport,' altering the order of the letters in the word 'AnnualCreditReport,' or substituting a different letter in the world 'AnnualCreditReport' takes advantage of common errors made in typing by consumers when attempting to reach <annualcreditreport.com>.").

In each of these defendant domain names, the addition of the letters is done in combination with the BITMEX mark, where the mark is the dominant portion of the domain name. Additionally, defendant domain names are attempting to capitalize on common errors made in typing by consumers when attempting to reach plaintiffs' website at bitmex.com. Therefore, the defendant domain names are confusingly similar to the mark.

For these reasons, the undersigned recommends a finding that plaintiffs have established a violation of the ACPA.

**Relief**

In this *in rem* action, plaintiffs seek an order directing VeriSign to change the registrar of record for the defendant domain names to plaintiffs' domain name registrar of choice, MarkMonitor, and order MarkMonitor to take all necessary steps to have plaintiffs listed as the registrant(s) of the defendant domain names. (Docket no. 24 at 14). Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." This court has previously ordered the transfer of domain names where those domain names infringe on valid trademarks. *See Int'l*

15

*Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 490 (E.D. Va. 2002).

Plaintiffs also request that the court order NameSilo to transfer to plaintiffs any other domain names that include or resemble plaintiffs' BITMEX mark registered or are owned by the registrant(s) of defendant domain names. However, such a transfer is not supported by 15 U.S.C. § 1125(d)(1)(C). This action does not involve domain names outside of defendant domain names. Therefore, plaintiffs' request for the transfer of domain names outside of defendant domain names is not appropriate.

Given that plaintiffs have established a violation of the ACPA through the registration and use of the defendant domain names, the undersigned recommends an order be entered directing VeriSign to change the registrar of record for the defendant domain names to plaintiffs' domain name registrar of choice, MarkMonitor, and order MarkMonitor to change the registrant of defendant domain names to plaintiffs.

## Conclusion

For the reasons stated above, the undersigned recommends that a default judgment be entered in favor of plaintiffs and against each of the defendant domain names pursuant to Count I alleging a violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(C). The undersigned recommends it be ordered that VeriSign, Inc., as registry for the following domain names, change the registrar of record for the following defendant domain names to plaintiffs' domain name registrar of choice, MarkMonitor, and direct MarkMonitor to take all necessary steps to have plaintiffs listed as the registrants of the defendant domain names bitmexaa.com, bitmexab.com, bitmexac.com, bitmexad.com, bitmexae.com, bitmexaf.com, bitmexag.com, bitmexah.com, bitmexaj.com, bitmexak.com, bitmexal.com, bitmexam.com,

16

bitmexan.com, bitmexao.com, bitmexap.com, bitmexaq.com, bitmexar.com, bitmexas.com,

bitmexat.com, bitmexau.com, bitmexav.com, bitmexaw.com, bitmexax.com, bitmexay.com,

bitmexaz.com, bitmexba.com, bitmexbb.com, bitmexbc.com, bitmexbd.com, bitmexbe.com,

bitmexbf.com, bitmexbg.com, bitmexbh.com, bitmexbi.com, bitmexbj.com, bitmexbk.com,

bitmexbl.com, bitmexbm.com, bitmexbn.com, bitmexbo.com, bitmexbp.com, bitmexbq.com,

bitmexbr.com, bitmexbs.com, bitmexbu.com, bitmexbv.com, bitmexbw.com, bitmexbx.com,

bitmexby.com, bitmexbz.com, bitmexca.com, bitmexcb.com, bitmexcc.com, bitmexcd.com,

bitmexce.com, bitmexcf.com, bitmexcg.com, bitmexci.com, bitmexcj.com, bitmexck.com,

bitmexcl.com, bitmexcm.com, bitmexcp.com, bitmexcq.com, bitmexcr.com, bitmexcs.com,

bitmexct.com, bitmexcu.com, bitmexcv.com, bitmexcw.com, bitmexcx.com, bitmexcy.com,

bitmexcz.com, bitmexda.com, bitmexdb.com, bitmexdc.com, bitmexdd.com, bitmexde.com,

bitmexdf.com, bitmexdg.com, bitmexdh.com, bitmexdi.com, bitmexdj.com, bitmexdk.com,

bitmexdl.com, bitmexdm.com, bitmexdn.com, bitmexdo.com, bitmexdp.com, bitmexdq.com,

bitmexdr.com, bitmexds.com, bitmexdt.com, bitmexdu.com, bitmexdv.com, bitmexdw.com,

bitmexdx.com, bitmexdy.com, bitmexdz.com, bitmexea.com, bitmexeb.com, bitmexec.com,

bitmexef.com, bitmexeg.com, bitmexeh.com, bitmexei.com, bitmexej.com, bitmexek.com,

bitmexel.com, bitmexem.com, bitmexen.com, bitmexeo.com, bitmexep.com, bitmexeq.com,

bitmexer.com, bitmexet.com, bitmexeu.com, bitmexev.com, bitmexew.com, bitmexey.com,

bitmexez.com, bitmexfa.com, bitmexfb.com, bitmexfc.com, bitmexfd.com, bitmexfe.com,

bitmexff.com, bitmexfg.com, bitmexfh.com, bitmexfi.com, bitmexfj.com, bitmexfk.com,

bitmexfl.com, bitmexfm.com, bitmexfn.com, bitmexfo.com, bitmexfp.com, bitmexfq.com,

bitmexfr.com, bitmexfs.com, bitmexft.com, bitmexfu.com, bitmexfv.com, bitmexfw.com,

bitmexfy.com, bitmexfz.com, bitmexga.com, bitmexgb.com, bitmexgc.com, bitmexgd.com,

bitmexge.com, bitmexgg.com, bitmexgh.com, bitmexgi.com, bitmexgj.com, bitmexgk.com,

bitmexgl.com, bitmexgm.com, bitmexgn.com, bitmexgo.com, bitmexgp.com, bitmexgq.com,

bitmexha.com, bitmexhb.com, bitmexhc.com, bitmexhd.com, bitmexhe.com, bitmexhf.com,

bitmexhg.com, bitmexhh.com, bitmexhi.com, bitmexhj.com, bitmexhk.com, bitmexhl.com,

bitmexhm.com, bitmexhn.com, bitmexho.com, bitmexhp.com, bitmexhq.com, bitmexhr.com,

bitmexhs.com, bitmexht.com, bitmexhu.com, bitmexhv.com, bitmexhw.com, bitmexhx.com,

bitmexhy.com, bitmexhz.com, bitmexib.com, bitmexic.com, bitmexid.com, bitmexie.com,

bitmexif.com, bitmexig.com, bitmexih.com, bitmexii.com, bitmexij.com, bitmexik.com,

bitmexil.com, bitmexip.com, bitmexiq.com, bitmexir.com, bitmexis.com, bitmexiu.com,

bitmexiv.com, bitmexiw.com, bitmexiy.com, bitmexiz.com, bitmexja.com, bitmexjb.com,

bitmexjc.com, bitmexjd.com, bitmexje.com, bitmexjf.com, bitmexjg.com, bitmexjh.com,

bitmexji.com, bitmexjj.com, bitmexjk.com, bitmexjl.com, bitmexjm.com, bitmexjn.com,

bitmexjo.com, bitmexjp.com, bitmexjq.com, bitmexjr.com, bitmexjs.com, bitmexjt.com,

bitmexju.com, bitmexjv.com, bitmexjw.com, bitmexjx.com, bitmexjy.com, bitmexjz.com,

bitmexka.com, bitmexkb.com, bitmexkc.com, bitmexkd.com, bitmexke.com, bitmexkf.com,

bitmexkg.com, bitmexkh.com, bitmexki.com, bitmexkj.com, bitmexkk.com, bitmexkl.com,

bitmexkm.com, bitmexkn.com, bitmexko.com, bitmexkp.com, bitmexkq.com, bitmexks.com,

bitmexkt.com, bitmexku.com, bitmexkv.com, bitmexkw.com, bitmexkx.com, bitmexky.com,

bitmexkz.com, bitmexla.com, bitmexlb.com, bitmexlc.com, bitmexld.com, bitmexle.com,

bitmexlf.com, bitmexlg.com, bitmexlh.com, bitmexli.com, bitmexlj.com, bitmexlk.com,

bitmexll.com, bitmexlm.com, bitmexln.com, bitmexlo.com, bitmexlp.com, bitmexlq.com,

bitmexlr.com, bitmexls.com, bitmexlt.com, bitmexlu.com, bitmexlv.com, bitmexlw.com,

bitmexly.com, bitmexlz.com, bitmexma.com, bitmexmb.com, bitmexmc.com, bitmexmd.com,

bitmexmf.com, bitmexmg.com, bitmexmh.com, bitmexmi.com, bitmexmj.com, bitmexmk.com,

bitmexml.com, bitmexmm.com, bitmexmn.com, bitmexmo.com, bitmexmp.com, bitmexmq.com,

bitmexmr.com, bitmexms.com, bitmexmt.com, bitmexmu.com, bitmexmv.com, bitmexmw.com,

bitmexmx.com, bitmexmy.com, bitmexmz.com, bitmexna.com, bitmexnb.com, bitmexnc.com,

bitmexnd.com, bitmexne.com, bitmexnf.com, bitmexng.com, bitmexnh.com, bitmexni.com,

bitmexnj.com, bitmexnk.com, bitmexnl.com, bitmexnm.com, bitmexnn.com, bitmexno.com,

bitmexnp.com, bitmexnq.com, bitmexnr.com, bitmexns.com, bitmexnt.com, bitmexnu.com,

bitmexnv.com, bitmexnw.com, bitmexnx.com, bitmexny.com, bitmexnz.com, bitmexoa.com,

bitmexob.com, bitmexoc.com, bitmexod.com, bitmexoe.com, bitmexof.com, bitmexog.com,

bitmexoh.com, bitmexoj.com, bitmexok.com, bitmexol.com, bitmexon.com, bitmexoo.com,

bitmexop.com, bitmexoq.com, bitmexor.com, bitmexos.com, bitmexot.com, bitmexou.com,

bitmexov.com, bitmexow.com, bitmexox.com, bitmexoy.com, bitmexoz.com, bitmexpa.com,

bitmexpb.com, bitmexpc.com, bitmexpd.com, bitmexpe.com, bitmexpf.com, bitmexpg.com,

bitmexph.com, bitmexpi.com, bitmexpj.com, bitmexpl.com, bitmexpn.com, bitmexpo.com,

bitmexpp.com, bitmexpq.com, bitmexpr.com, bitmexps.com, bitmexpt.com, bitmexpu.com,

bitmexpv.com, bitmexpw.com, bitmexpx.com, bitmexpy.com, bitmexpz.com, bitmexqa.com,

bitmexqb.com, bitmexqc.com, bitmexqd.com, bitmexqe.com, bitmexqf.com, bitmexqg.com,

bitmexqh.com, bitmexqi.com, bitmexqj.com, bitmexqk.com, bitmexql.com, bitmexqm.com,

bitmexqn.com, bitmexqo.com, bitmexqp.com, bitmexqr.com, bitmexqs.com, bitmexqt.com,

bitmexqu.com, bitmexqv.com, bitmexqw.com, bitmexqx.com, bitmexqy.com, bitmexqz.com,

bitmexra.com, bitmexrb.com, bitmexrc.com, bitmexrd.com, bitmexre.com, bitmexrf.com,

bitmexrg.com, bitmexrh.com, bitmexri.com, bitmexrj.com, bitmexrk.com, bitmexrl.com,

bitmexrm.com, bitmexrn.com, bitmexro.com, bitmexrp.com, bitmexrq.com, bitmexrr.com,

bitmexrs.com, bitmexrt.com, bitmexru.com, bitmexrv.com, bitmexrw.com, bitmexrx.com,

bitmexry.com, bitmexrz.com, bitmexsa.com, bitmexsc.com, bitmexsd.com, bitmexsf.com,

bitmexsg.com, bitmexsh.com, bitmexsi.com, bitmexsj.com, bitmexsk.com, bitmexsl.com,

bitmexsm.com, bitmexsn.com, bitmexso.com, bitmexsp.com, bitmexsr.com, bitmexss.com,

bitmexst.com, bitmexsu.com, bitmexsv.com, bitmexsw.com, bitmexsx.com, bitmexsy.com,

bitmexsz.com, bitmexta.com, bitmextb.com, bitmextc.com, bitmextd.com, bitmextf.com,

bitmextg.com, bitmexth.com, bitmexti.com, bitmextj.com, bitmextk.com, bitmextl.com,

bitmextm.com, bitmextn.com, bitmexto.com, bitmextp.com, bitmextq.com, bitmextr.com,

bitmexts.com, bitmextt.com, bitmextu.com, bitmextv.com, bitmextw.com, bitmextx.com,

bitmexty.com, bitmextz.com, bitmexua.com, bitmexub.com, bitmexuc.com, bitmexud.com,

bitmexue.com, bitmexuf.com, bitmexug.com, bitmexuh.com, bitmexui.com, bitmexuj.com,

bitmexuk.com, bitmexul.com, bitmexum.com, bitmexun.com, bitmexuo.com, bitmexup.com,

bitmexuq.com, bitmexur.com, bitmexus.com, bitmexut.com, bitmexuu.com, bitmexuv.com,

bitmexuw.com, bitmexux.com, bitmexuy.com, bitmexuz.com, bitmexva.com, bitmexvb.com,

bitmexvc.com, bitmexvd.com, bitmexve.com, bitmexgr.com, bitmexgs.com, bitmexgt.com,

bitmexgu.com, bitmexgv.com, bitmexgw.com, bitmexgx.com, bitmexgy.com, bitmexgz.com,

bitmexvf.com, bitmexvg.com, bitmexvh.com, bitmexvi.com, bitmexvj.com, bitmexvk.com,

bitmexvl.com, bitmexvm.com, bitmexvn.com, bitmexvo.com, bitmexvp.com, bitmexvq.com,

bitmexvr.com, bitmexvs.com, bitmexvt.com, bitmexvu.com, bitmexvv.com, bitmexvw.com,

bitmexvx.com, bitmexvy.com, bitmexvz.com, bitmexwa.com, bitmexwb.com, bitmexwc.com,

bitmexwd.com, bitmexwe.com, bitmexwf.com, bitmexwg.com, bitmexwh.com, bitmexwi.com,

bitmexwj.com, bitmexwk.com, bitmexwl.com, bitmexwm.com, bitmexwn.com, bitmexwo.com,

bitmexwp.com, bitmexwq.com, bitmexwr.com, bitmexws.com, bitmexwt.com, bitmexwu.com,

bitmexwv.com, bitmexww.com, bitmexwx.com, bitmexwy.com, bitmexwz.com, bitmexya.com,

bitmexyb.com, bitmexyc.com, bitmexyd.com, bitmexye.com, bitmexyf.com, bitmexyg.com,

bitmexyh.com, bitmexyi.com, bitmexyj.com, bitmexyk.com, bitmexyl.com, bitmexym.com,

bitmexyn.com, bitmexyo.com, bitmexyp.com, bitmexyq.com, bitmexyr.com, bitmexys.com,

bitmexyt.com, bitmexyu.com, bitmexyv.com, bitmexyw.com, bitmexyx.com, bitmexyy.com,

bitmexyz.com, bitmexza.com, bitmexzb.com, bitmexzc.com, bitmexzd.com, bitmexze.com,

bitmexzf.com, bitmexzg.com, bitmexzi.com, bitmexzj.com, bitmexzk.com, bitmexzl.com,

bitmexzm.com, bitmexzn.com, bitmexzo.com, bitmexzp.com, bitmexzq.com, bitmexzr.com,

bitmexzs.com, bitmexzt.com, bitmexzu.com, bitmexzv.com, bitmexzw.com, bitmexzx.com,

bitmexzy.com, and bitmexzz.com.

## Notice

The parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

Counsel for plaintiffs are directed to send a copy of these proposed findings of fact and recommendations to the registrar, NameSilo, and file a certificate of service indicating the date the copy was sent.

ENTERED this 14th day of April, 2023.

/s/
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

21